## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADEDAYO ADEBOYE,**<br><br>    *Plaintiff*,<br><br> v.<br><br>**DEPARTMENT OF VETERANS AFFAIRS,**<br><br>**As to each Defendant Serve:**<br> **SECRETARY, DEPARTMENT OF**<br> **VETERANS AFFAIRS**<br> 810 Vermont Ave., NW<br> Washington, DC 20420<br><br> **UNITED STATES ATTORNEY**<br> **FOR THE DISTRICT OF COLUMBIA**<br> 601 D Street NW<br> Washington, DC  20530<br><br> **ATTORNEY GENERAL**<br> **OF THE UNITED STATES**<br> U.S. Department of Justice<br> 950 Pennsylvania Avenue<br> Washington, District of Columbia 20530<br><br>      Defendants. | **COMPLAINT**<br><br>**Civil Action No.** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF (MANDAMUS)

For his Complaint, Dr. Adedayo Adeboye, M.D. ("Dr. Adedayo" or "Plaintiff"), by the undersigned counsel, states as follows:

1. This is an action brought by Dr. Adedayo Adeboye, M.D., a former physician at the Department of Veterans Affairs (VA), seeking declaratory and injunctive relief in the nature of mandamus based on the VA's repeated violations of its own mandatory policies and of Dr. Adeboye's constitutional right to due process of law during a disciplinary and related grievance proceeding.

2.    Dr. Adeboye was removed from federal service following the issuance of an unlawful no-contact order, a flawed disciplinary process in which the VA failed to provide him with access to the full evidentiary record relied upon by the deciding official, and denied him his right to collect rebuttal affidavits due to the unlawful no-contact order.

3.    The harmful procedural errors and due process violations continued into the post-removal grievance process. The VA has refused to produce evidence relevant to the removal action and grievance, and it has unreasonably restricted his contact of relevant witnesses and denied his request to call relevant witnesses at the grievance hearing.

4.    These actions violated binding VA policies and deprived Dr. Adeboye of constitutionally required notice and a meaningful opportunity to be heard, in contravention of due process.

5.    Dr. Adeboye brings this action under 28 U.S.C. § 1361 seeking an order compelling the VA to comply with its mandatory policies and to afford him the procedural protections required by law.

**<u>PARTIES</u>**

6.    Plaintiff Adedayo Adeboye, M.D., is a board-certified physician who served as the Chief of Cardiology at the Memphis VA Medical Center until his removal in July 2025. He was first appointed to a physician position pursuant to 38 U.S.C. § 7401(1) effective September 7, 2014, and was promoted to Chief of Cardiology of the Memphis VA Medical Center in June 2019.  Until such time as he engaged in protected activity beginning in January 2024, he had consistently received favorable performance reviews and had not been subjected to any disciplinary actions.

7.     Defendant Denis McDonough is the Secretary of the Department of Veterans Affairs and is sued in his official capacity. The Department of Veterans is headquartered at 810 Vermont Avenue NW, in Washington DC.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1361 (mandamus jurisdiction) and 28 U.S.C. § 1331 (federal question).  Mandamus is warranted as VA Handbook 5021 imposes non-discretionary duties, no alternative remedy exists (Grievance Hearing Examiner cannot cure constitutional defects, per his ruling), and relief is clear.

9.     Venue is proper in this district under 28 U.S.C. § 1391(e) because the defendant is an officer of the United States sued in his official capacity and the acts and omissions giving rise to this action occurred in part in this District.

10.     As set forth below, the VA had a clear duty to provide Dr. Adeboye with the due process set forth in its policies and Dr. Adeboye had an indisputable right to due process, and there is an absence of any adequate alternative remedy.

## LEGAL FRAMEWORK

### VA Personnel Management System

11.     In 2017 Congress passed the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017, which modified the appeal rights of VA employees appointed under 38 U.S.C. § 7401 (1).

12.     Notwithstanding the modifications, Congress intended VA employees to have constitutionally adequate levels of due process.

13.     Congress provided VA employees with the right to receive written notice stating the specific reason for the proposed action and time to answer orally and in writing and to

<u>furnish affidavits</u> and other documentary evidence in support of the answer. *See* 38 U.S.C. § 7463 (c)(2) (emphasis added).

14.    Congress further provided that the VA's grievance procedures shall include the right to a formal review by an impartial examiner, and a right to a prompt review of the examiner's findings and recommendations by an official of a higher level than the official who decided the action. *See* 38 U.S.C. § 7463 (d).

15.    The VA implemented this Congressional mandate by issuing VA Employee/Management Relations Handbook 5021/14, Part II, Disciplinary and Adverse Actions Under Title 38 (VA Handbook 5021).

16.    VA Handbook 5021 provides that, when an incident occurs which may result in a potential disciplinary or major adverse action, inquiry will be made into the incident as soon as possible to obtain the facts and determine what action, if any, is warranted.

17.    VA Handbook 5021 provides that, "evidence will be developed impartially and an effort will be made to resolve any conflicting statements by developing additional evidence. Material which cannot be disclosed to the employee or to the employee's representative may not be used to support a disciplinary or major adverse action.

18.    VA Handbook 0700, Chapter 7, AIB Investigative Reports identifies "Required Content" of a report as including that, the AIBs "resolve disputed issues in the Conclusions, which <u>must</u> be supported by a preponderance of evidence." It provides further that, "the AIB investigative report <u>should</u> identify any evidence that materially conflicts with the AIB's Conclusion and discuss the AIB's process in resolving the conflict." (emphasis added).

19.    VA Handbook 5021 provides that advance notice of a proposed disciplinary action <u>must</u> contain, among other things, "a statement of the specific charges upon which the

proposed action is based, including names, dates, places, and other data sufficient to enable the employee to fully understand the charges and to respond to them."

20.     With respect to the Evidence File, VA Handbook 5021 provides that the evidence file "<u>must</u> contain the evidence upon which the notice of proposed action is based, <u>and which supports the charges in that notice</u> (including notices of past disciplinary and/or major adverse action, if such action forms part of the basis for the penalty proposed)." (emphasis added).

21.     VA Handbook 5021 further provides that employees have, "the right to reply orally or in writing or both orally and in writing to the deciding official, or designee, <u>and to submit affidavits</u> and other documentary evidence in support of the reply by a specified date." (emphasis added).

22.     VA Handbook 5021 provides further that the employee will be provided official duty time to secure affidavits.

23.     VA Handbook 5021 provides that, "if the notice of proposed adverse action is determined to be procedurally defective to the detriment of the employee's substantive rights, [ ] the notice of proposed action <u>will</u> be rescinded and a new notice of proposed action issued." (emphasis added).

24.     VA Handbook 5021 provides that a "procedural defect is detrimental to the employee's substantive rights when it is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error."

25.     Regarding the grievance process, VA Handbook 5021 provides that the grievance file <u>will</u> contain "material or <u>evidence used to support administrative action</u> (e.g., if the grievance is based on a disciplinary or other administrative action); <u>[and] any other information considered appropriate for review in making a decision on the grievance</u>." (emphasis added).

26.     VA Handbook 5021 provides further that the grievance hearing examiner, "will add appropriate information to the file based on any inquiry made," [and] that the examiner, "will ensure that the grievance file contains all documents related to the grievance, including evidence collected, statements of witnesses, notices and replies pertinent to the case and the report of hearing when a hearing is held." (emphasis added).

27.     VA Handbook 5021 provides that, "a complete copy of the grievance file will be provided to the employee, upon request." (emphasis added).

## FACTS

### I.     Prior Protected Activity

29.     On July 22, 2022, Dr. Adeboye sent an email to Chief of Staff Dr. Thomas Ferguson about the dysfunctional dual-service system that was adversely impacting the Cardiology Department.

30.     On February 9, 2023, Dr. Adeboye again emailed Dr. Thomas Ferguson and alerted him to the "dire situation" in the Cardiology Department, alerting him that the situation with nursing was at an "unbearable point," and that there was division, hostility and resistance coming from the nursing services. He further reported that he was concerned that patient care was being compromised.

31.     On March 8, 2023, Dr. Adeboye filed an OIG complaint alleging the patient safety was being compromised as a result of the physician-nurse hostility. Dr. Adeboye also reported that he was fearful of retaliation.

32.     On June 7, 2023, Dr. Adeboye sent an email to Dr. Thomas Ferguson reporting that Cardiology was in a state of dysfunction because of a lack of staffing and that patient safety was at risk.

33.    On January 23, 2024, Dr. Adeboye emailed his immediate supervisor, Chief of Medicine Dr. Charles Fraga and Dr. Thomas Ferguson concerning the "dire staffing shortage," in Cardiology that was detrimental to veterans and the VA's mission.

34.    On January 31, 2024, the National Cardiology Program Office (NCPO) conducted a site visit as part of its investigation into the issues raised by Dr. Adeboye in his OIG complaint. The NCPO coordinated their visit with Dr. Adeboye and raised the staffing issues that Dr. Adeboye previously raised with Dr. Ferguson and Dr. Fraga.

35.    On February 26, 2024, the NCPO issued a report critical of hospital leadership using non-credentialed staff for services and recommending restructuring and restaffing of the Cardiology Department.

36.    On June 6, 2024, the NCPO again visited the Cardiology Department and met with Dr. Adeboye. Dr. Adeboye reported to the NCPO that hospital leadership (Dr. Ferguson and Dr. Fraga) did not follow the NCPO prior recommendations.

37.    On June 13, 2024, the NCPO issued a report finding that leadership had not completely supported recommendations regarding staffing.

38.    On September 12, 2024, Dr. Adeboye's immediate supervisor, Chief of Medicine Dr. Charles Fraga, insisted on listening to a meeting Dr. Adeboye was scheduled have with the NCPO to discuss staffing concerns that Dr. Adeboye had previously raised.

39.    Dr. Adeboye was scheduled to meet with the NCPO again on December 4, 2024, and Dr. Fraga had again insisted on listening into the meeting; however, Dr. Adeboye was prevented from attending the meeting with the NCPO because, as discussed further below, Dr. Ferguson, through Dr. Fraga, issued Dr. Adeboye a No-Contact Order.

## II.     Misconduct on August 28, 2024

40.     On August 28, 2024, Dr. Adeboye partially completed a Cardiopulmonary resuscitation (CPR) training module.   After completing the section of the module that was specific to performing CPR on adults, Dr. Adeboye asked a subordinate VA employee to complete the CPR training related to infants.

41.     The subordinate employee agreed to Dr. Adeboye's request, and Dr. Adeboye left his Personal Identity Verification (PIV) card with the subordinate employee so that she would complete the training while logged into the system with Dr. Adeboye's PIV.

42.     The Program Director for Veteran/Employee Education Service entered the room and advised that it was unacceptable for the subordinate employee to complete the training on behalf of Dr. Adeboye.

43.     On August 29, 2024, the Program Director emailed her supervisor, the Deputy Chief for Veteran/Employee Education Service, with a statement of her observations of the misconduct.

44.     On August 29, 2024, the Deputy Chief for Veteran/Employee Education Service forwarded the Program Director's email to Dr. Thomas Ferguson, Dr. Fraga and the Deputy Chief of Staff.

45.     In the forwarded email to Dr. Thomas Ferguson, Dr. Charles Fraga and the Deputy Chief of Staff, the Deputy Chief for Veteran/Employee Education Service wrote that she had checked with an Information System Security Officer and was told that the employees would need to retake the VA Privacy & Information Security Awareness and Rules of Behavior Course. She noted further that, "it will be up to the supervisor to pursue any write-up for admonishment regarding the involved employees."

46.    On August 30, 2024, the Deputy Chief of Staff forwarded the email to Dr. Charles Fraga and wrote, "we need to discuss."

47.    On August 30, 2024, Fraga forwarded the email to Dr. Rebekah Kaplowitz, Deputy ACOS Ambulatory Care, and wrote, "this is the incident that is prompting the fact finding. [ ] There were two other people in the room that need identified and questioned. [] We can work together on the questions. We don't want to get too carried away but really get at the why she did something she knew was wrong."

### III.    Fact Finding

48.    Dr. Kaplowitz conducted interviews on September 5, September 13, and September 30, 2024.

49.    The subordinate employee responded to a question that asked, "were you harassed or coerced into the actions of 8/24/2024," by stating under oath that, "when he left, he said 'can you finish it up?' There was no consequence implied or inferred for not completing the skills task for Dr. Adeboye."

50.    The subordinate employee further testified that Dr. Adeboye never harassed her, yelled, screamed or threatened her.

51.    On September 30, 2024, Dr. Kaplowtiz interviewed Dr. Adeboye. Dr. Adeboye testified that he had known the subordinate employee for over twelve years, that he was trying to renew the certification before it would expire and that he had asked the subordinate employee to complete the training for him.  He testified further that he left the room because he had gotten called away because he needed to submit something.

52.    Dr. Adeboye admitted it was a "great mistake," and that if the subordinate employee had said no, he would have stayed to finish the certification or would have come back later. He testified further that he completed the training the following week.

53.    On October 1, 2024, Dr. Kaplowitz issued her Fact Finding Report that found that Dr. Adeboye did not safeguard his PIV card from fraudulent use and that the subordinate employee completed the infant Basic Life Support (BLS) course to completion while logged into the system with Dr. Adeboye's PIV.

54.    Dr. Kaplowitz further found that the subordinate employee did not agree that she was coerced into completing the skills portion by Dr. Adeboye and that there were no corroborating reports of coercion.

55.    On October 4, 2024, Dr. Fraga concurred with the report, but issued comments that, "the fact finding for an incident that occurred on 8/28/2024 involving multiple BUE and a supervisor, a section chief, is incomplete and insufficient for any administrative determination. The information obtained is unclear and contradicting in nature rendering me unable to formulate any action plan. I will refer this unresolved fact finding for further administrative investigation including an administrative investigation board."

**IV.    Administrative Investigation Board (AIB)**

56.    In accordance with paragraphs 10 through 26, *Supra*, VA Handbook 0700, Chapter 7, requires that "Conclusions," be supported by a preponderance of the evidence." VA Handbook 0700 requires further that, the AIB investigative report should identify any evidence that materially conflicts with the AIB's Conclusion and discuss the AIB's process in resolving of the conflict."

57.    The VA never provided Dr. Adeboye a copy of the Charge Letter. Upon information and belief, the Charge Letter is dated November 7, 2024, and was issued on November 12, 2024, by either Joseph Vaughn, Dr. Charles Fraga or Dr. Thomas Ferguson.

58.    Upon information and belief, the Charge Letter convened an AIB to review "allegations of improper use of employee PIV card(s) for the purpose of falsifying completion of the certification/recertification for Cardiopulmonary Resuscitation (CPR)."

59.    Upon information and belief, the Charge Letter tasked the AIB to investigate five issues.

60.    The first issue identified in the Charge Letter was: "Did Dr. Adebayo Adeboye instruct a subordinate(s) to use his PIV card to fraudulently complete the skills portion of CPR certification? If yes, did the subordinate(s) comply with the instruction? Did the subordinate report this to anyone?"

61.    The second issue identified in the Charge Letter was: "Has Dr. Adebayo Adeboye abused or engaged in management practices or intimidation to satisfy training requirements or other activities that were specifically incumbent on him to complete?"

62.    The third issue identified in the Charge Letter was: "Has Dr. Adebayo Adeboye engaged in actions that demonstrated favoritism of any of his subordinates? If yes, did the favoritism result in favored subordinates receiving easier or lesser work duties?"

63.    The fourth issue identified in the Charge Letter was: "Did Dr. Adebayo Adeboye solicit and/or coerce his staff to falsify training documents?"

64.    The fifth issue identified in the Charge Letter was: "Have any management practices used by Dr. Adebayo Adeboye caused or led to delayed work completion or lesser productivity associated with the service he manages?"

65.    Upon information and belief, the AIB heard sworn testimony from eighteen witnesses between November 14, 2024, and November 27, 2024.

66.    The AIB Memorandum dated December 27, 2024 (hereinafter AIB Memorandum), lists 10 exhibits as attachments, which includes Exhibit 1, AIB Letter; Exhibit 2, Signed Notice of Obligation Form; and Exhibit 4, Witness testimony transcripts. Dr. Adeboye has never been provided with those Exhibits or attachments.

67.    The AIB Memorandum sets out six findings of fact, all of which pertain to Dr. Adeboye's misconduct on August 28, 2024.

68.    The AIB Memorandum sets out four "Incidental Findings," which it characterizes as "not specifically related to the scope of the investigation."

69.    The AIB Memorandum sets out six "Conclusions," as set forth below:

  a.  Dr. Adeboye did instruct a subordinate(s) to use his PIV card to fraudulently complete the skills portion of CPR certification;

  b.  Dr. Adeboye's [subordinate employee] did use his PIV card to fraudulently complete the skills portion of CPR certification;

  c.  Dr. Adeboye abused or engaged in management practices or intimidation to satisfy training requirements or other activities that were specifically incumbent upon him to complete;

  d.  Dr. Adeboye engaged in actions that demonstrated favoritism of his any of his [sic] subordinates and that his favoritism resulted in favored subordinates receiving easier or lesser work duties;

  e.  Dr. Adeboye did solicit and/or coerce his staff to falsify training documents;

  f.  Management practices used by Dr. Adeboye caused or led to delayed work completion or lesser productivity associated with the service he manages.

70.    The AIB Memorandum supports each of its six Conclusions by partially quoting the testimony of the exact same five witnesses.

71.    Two of the five witnesses quoted in the AIB Memorandum were the subject of Dr. Adeboye's protected activity discussed in Paragraphs 27 through 37, *Supra*.

72.    The AIB Memorandum does not quote the testimony of any other witness, including Dr. Adeboye.

73.    The AIB Memorandum does not discuss the evidence Dr. Adeboye provided that established that the five witnesses quoted in the AIB Memorandum were either biased against him or were the subject of Dr. Adeboye's prior protected complaints about staffing issues in the Cardiology Department.

74.    Two of the five witnesses quoted in the AIB Memorandum had not worked in the Cardiology Department for at least two years when the AIB Memorandum was issued.

75.    The AIB Memorandum does not discuss any testimony that contradicted the testimony of the five witnesses it quoted.

76.    On January 15, 2025, Medical Center Director Joseph P. Vaughn certified that he reviewed the AIB report and found that it was in compliance with VA Directive and Handbook 0700.

77.    On January 15, 2025, Medical Center Director Joseph P Vaughn indicated that he was forwarding the AIB report to the Chief of Staff, Dr. Thomas Ferguson, for appropriate action.

## V.    No-Contact Order

78.    On November 22, 2024, Dr. Charles Fraga sent Dr. Adeboye an email that included a sweeping No-Contact Order.

79.    The No-Contact Order was signed by Dr. Thomas Ferguson and provided that, "effective immediately, and until further notice, you are hereby ordered to have no contact with the staff or the physical location of the Cardiology Department."

80.    The No-Contact Order provided further that, you are prohibited from visiting the Cardiology Clinic, Cath Lab, any Cardiology administrative area as well as prohibited from contact or communication with Cardiology staff or others affiliated with Cardiology services[.]"

81.    The No-Contact Order provided further that, "you will be notified when these prohibitions are lifted, or if any other appropriate administrative action is to take place."

82.    The No-Contact Order provided further that, "failure to follow these instructions could lead to disciplinary action."

83.    The No-Contact Order was never rescinded.

84.    On June 30, 2025, which is during the reply period to the proposed removal, Dr. Adeboye's then attorney submitted a request to Medical Center Director Joseph Vaughn requesting that the No-Contact Order be lifted so that Dr. Adeboye could gather affidavits and exercise his rights to secure affidavits to counter the charges.

85.    Dr. Vaughn ignored Dr. Adeboye's request.

86.    The No-Contact Order did not comply with VA Handbook 5979 and Directive 5019.02, which limits the circumstances that such orders can be issued, and which requires that the orders be reviewed at least every five business days and includes regular check-ins with the employee.

**VI.    Disciplinary Process**

87.    On June 11, 2025, Dr. Charles Fraga issued Dr. Adeboye a proposed removal dated June 5, 2025, which set forth four separate charges of misconduct.

88.     The first charge of misconduct was for Falsification of CPR Certification, and pertained to Dr. Adeboye permitting a subordinate employee to complete his CPR certification.

89.     The second charge of misconduct was for Security Violation, and pertained to Dr. Adeboye relinquishing control of his PIV card to the subordinate employee so that she could complete his CPR certification.

90.     The third charge of misconduct was for a Violation of No Contact Order, which pertained to Dr. Adeboye allegedly interacting with employees in the outpatient clinic while the No Contact Order was in effect.

91.     The fourth charge of misconduct was for Abuse of Authority, and alleged two specifications. The first specification was that "on multiple occasions, you demonstrated favoritism in scheduling, workload assignment, and evaluations, resulting in a workplace environment described as fear-based and toxic by several witnesses. Employees reported that clinical responsibilities were unevenly distributed to benefit a select few and to reduce your own workload. These practices undermined morale and potentially exposed the agency to EEO-related complaints. This behavior violations VHA Code of Conduct MCP 00-0186, Section 5(b), which requires supervisors to treat all employees fairly and equitably."

92.     The second specification of the fourth charge related to Dr. Adeboye requesting a subordinate employee complete his CPR recertification.

93.     As noted above, the No-Contact Order was in place throughout the disciplinary process, including during the period when Dr. Adeboye sought to gather affidavits as part of his response to the proposed removal. On June 17, 2025, Dr. Adeboye's then attorney emailed Joseph Vaughn requesting that the No Contact Order be lifted for the limited purpose of collecting rebuttal affidavits.

94.    Joseph Vaughn ignored the request to lift the No-Contact Order.

95.    On June 17, 2025, Dr. Adeboye's then attorney submitted a request for the documents relied upon. Specifically, he requested the full AIB transcripts that were referenced as attachments and exhibits to the AIB report.

96.    Joseph Vaughn ignored the request to provide those documents.

97.    On June 30, 2025, Joseph Vaughn issued a decision dated June 27, 2025, which upheld the proposed removal action and made it effective July 11, 2025.

**VIII.   Grievance Process**

98.    On July 15, 2025, Dr. Adeboye filed a formal grievance pursuant to VA Handbook 5021, challenging the removal action.

99.    Dr. Adeboye's formal grievance raised several issues of due process violations, including that the: VA denied him the right to gather affidavits during the disciplinary process in response to the proposed removal; and, that the VA denied him the right to review the materials relied upon, which included the full AIB file and witness transcripts that were partially quoted in the AIB Memorandum and referenced as attachments thereto, and that were provided to the Deciding Official Joseph Vaughn.

100.   On September 3, 2025, The VA's designated attorney representative in the grievance opposed the majority of Dr. Adeboye's witnesses, opposed including the AIB file in the grievance file, and argued that Dr. Adeboye's witnesses would have "little or no value now," because Dr. Adeboye had not submitted those statements to Mr. Vaughn prior to his removal.

101.   On September 16 and 17, 2025, the VA's designated attorney representative instructed Dr. Adeboye's representative and his associates to stop contacting fact witnesses that Dr. Adeboye had listed as witnesses for the grievance hearing claiming that the witnesses were

"managerial officials" even though those witnesses were listed as fact witnesses related to charge that Dr. Adeboye had created a toxic work environment.

102.    On September 17, 2025, the grievance examiner denied Dr. Adeboye's request to include the full AIB file as an exhibit, approved only a narrow set of witnesses, and explicitly ruled that he lacked authority to remedy the due process violations that occurred during the disciplinary process.

103.    In response to a request that the VA's designated attorney representative identify which fact witnesses were "Managers," on September 22, 2025, the VA's designated attorney representative identified twelve witnesses as being managers who could not be directly contacted.

104.    Dr. Adeboye was thus deprived of a meaningful opportunity to challenge the charges against him or the way they were developed and used.

## CAUSES OF ACTION

### Count I – Violation Fifth Amendment Right to Due Process

105.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

106.    The Department of Veterans Affairs deprived Dr. Adeboye of his constitutionally protected property interest in continued employment without affording him adequate notice or a meaningful opportunity to respond to the charges.

107.    The VA failed to follow the mandates in VA Handbook 5021 requiring the VA to:

    a.  Provide Dr. Adeboye with the materials relied upon and that support the charges (i.e., the full AIB file and attachments inclusive of transcripts of witness testimony) that was reviewed by the deciding official ex parte;

    b.  Provide Dr. Adeboye with the statutory right given to all Title 38 employees to gather affidavits in response to a proposed removal, and to present those affidavits to the deciding official <u>before</u> a decision is issued on the proposed

removal;

    c.   With respect to Charge 4, Specification 1, the VA failed to comply with the mandate in VA Handbook 5021 to provide Dr. Adeboye with a proposed removal that contained names, dates, places and other data sufficient to enable him to fully understand and respond to the charges and depended wholly on the testimony of known-biased sources; and,

    d.   Ensure that the grievance file contains all documents related to the grievance, including evidence collected and statements of witnesses.

108.   The Grievance Hearing Examiner's refusal to include the full AIB file (including witness transcripts) in the grievance file, to allow critical witness testimony during the hearing, and to remedy the due process violations that took place during the discipline process before the grievance hearing compounded the due process violations that occurred during the disciplinary process.

109.   The Grievance Hearing Examiner declared that he was unable to remedy the due process violations that occurred during the disciplinary process and that the grievance hearing would proceed with those due process violations unabated.

110.   Dr. Adeboye will be irrevocably injured should the grievance hearing continue without the VA first being required to comply with the due process requirements set forth in its published policies and as required by Congress.

111.   The VA's failures to comply with its policies during the grievance and hearing phases constitute harmful procedural error and a colorable constitutional violation.

## Count II – Mandamus (28 U.S.C. § 1361)

112.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

113.   The Secretary of the VA has a clear, non-discretionary duty to follow binding agency policies and afford Title 38 employees the procedural protections set forth in VA Handbook 5021.

114.    The VA refused to allow Dr. Adeboye to gather affidavits in response to the Notice of Proposed Removal despite a clear duty by policy and statute to afford Dr. Adeboye official time to gather affidavits and present those affidavits to the deciding official prior to a decision being issued on the proposed removal.

115.    The VA refused to provide him with copies of the Full AIB file and underlying evidence despite a clear duty pursuant to VA policy to provide him with the relevant materials that were presented to and reviewed ex parte by the Deciding Official (Joseph Vaughn) on the removal action.

116.    The VA refused to include the full AIB file and underlying evidence into the grievance file despite VA policy specifically mandating the Grievance Hearing Examiner include relevant evidence into the grievance file.

117.    Dr. Adeboye has no other adequate remedy to correct these violations of VA policy and law. Dr. Adeboye raised these issues with the Grievance Hearing Examiner and the VA's Office of General Counsel representative, and they refused to correct these violations. Mandamus is necessary to compel the VA to follow its own rules and the statute and afford Dr. Adeboye due process.

**Count III – Violation of the Administrative Procedure Act (5 U.S.C. § 706)**

118.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

119.    The VA's issuance of the no-contact order, procedural violations in the AIB investigation (including reliance on biased witnesses and omission of exculpatory evidence), and withholding of the full AIB file (including transcripts) constitute final agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

120.    These actions deviated from the VA's binding policies in Handbook 5021, which mandate fair notice, access to evidence, and impartial processes for Title 38 employees, as well as statutory requirements under 38 U.S.C. §§ 7461-7463 for adequate procedural safeguards.

121.    The no-contact order arbitrarily restricted Dr. Adeboye's ability to gather rebuttal affidavits without justification or due process, the AIB violations tainted the investigative record by incorporating known biases (as detailed in Adeboye Decl. ¶¶ 13-28), and the withholding of materials denied meaningful review, all contrary to agency regulations and fundamental fairness.

122.    Dr. Adeboye has no adequate alternative remedy under the Title 38 scheme for these collateral procedural defects, which are reviewable under the APA as they are not inextricably tied to the merits of the final removal decision.

123.    Accordingly, the Court should set aside these unlawful actions under APA § 706 and compel the VA to comply with its policies by rescinding the no-contact order, correcting the AIB flaws, and producing the full AIB file for inclusion in the grievance process.

## PRAYER FOR RELIEF FOR COUNTS I-III

WHEREFORE, Plaintiff respectfully requests that the Court:

124.    Declare that Defendant's actions violated Plaintiff's rights under the Fifth Amendment;

125.    Declare that Defendant violated VA Handbook 5021 and related mandatory policies set forth above;

126.    Issue a writ of mandamus compelling the VA to:

a.    Rescind the Removal Action and Permit Dr. Adeboye an opportunity to contact witnesses so he can gather and present relevant affidavits to a Deciding Official prior to a decision on the proposed removal being issued; and,

b.    Produce the full AIB file, including witness testimony, to Dr. Adeboye and

to include it in the materials relied upon and the grievance file.

127.   Grant preliminary and permanent injunctive relief barring the VA from enforcing the removal until such procedures are provided;

128.   Grant such other declaratory relief as the Court deems just and proper.

Dated:  October 29, 2025                          Respectfully submitted,

                                                  By: *Brett O'Brien*
                                                  BRETT J. O'BRIEN, ESQ.
                                                  Bar #: 1753983
                                                  NATIONAL SECURITY LAW FIRM
                                                  1250 Connecticut Avenue, Suite 700
                                                  Washington, DC  20036
                                                  Phone:  (202) 600-4996
                                                  Fax:      (202) 545-6318
                                                  Email:  Brett@nationalsecuritylawfirm.com